OPINION
{¶ 1} This appeal arises from the Trumbull County Court of Common Pleas wherein, partial summary judgment was granted in favor of appellee, Frank D. DeJute ("DeJute").
 {¶ 2} The Mahoning Valley Sanitary District, ("MVSD") is a political subdivision of Ohio that provides water to the cities of Youngstown and Niles. The MVSD was overseen by the "Court of Jurisdiction" which was comprised of the Mahoning and Trumbull County Common Pleas Courts.[1] The MVSD is managed by a board of directors which, for the time period covered by the special audit report in this case, consisted of two members: Frank DeJute and Edward Flask.
 {¶ 3} In 1987, due to the deterioration of equipment and changing environmental regulations, a "Capital Improvement Program" was developed. The entire program was to be completed by the year 2000. Gilbane Building Company was hired in 1992, as the construction manager for the capital improvement program.
 {¶ 4} Construction had commenced in 1992; however, by 1996, construction had fallen behind schedule and ultimately stopped. In March 1996, the Court of Jurisdiction ordered the Ohio Auditor of State to conduct a special audit of the MVSD and the capital improvement program, pursuant to R.C. 117.28. The audit took approximately one year to complete which resulted in an audit covering the years 1991 to 1996. A special audit report was issued on August 7, 1997, which included twenty-seven findings for recovery. As a result of the special audit, three lawsuits were filed. A claim against Gilbane Building Company was filed in the United States District Court for the Southern District of Ohio. This suit was filed against DeJute in the Trumbull County Court of Common Pleas. A third suit was filed against Edward Flask in the Mahoning County Court of Common Pleas.
 {¶ 5} The sole claim in each of the lawsuits was based on the statutory cause of action created by R.C. 117.28, which allows a statutory recovery action to be filed if, after an audit, the Auditor of State of Ohio finds in an audit report that public funds of a political subdivision of Ohio were illegally expended.
 {¶ 6} As the Gilbane suit proceeded, Gilbane filed a motion for summary judgment in October 1999. The district court granted Gilbane's motion for summary judgment, holding that the "special audit" conducted was not a proper audit for which recovery could be granted pursuant to R.C. 117.28. The district court subsequently vacated that judgment six days later upon its own motion, holding that the trial court would instead certify the issue to the Supreme Court of Ohio. The issue was never ultimately certified, and Gilbane filed a supplemental motion for summary judgment in early 2001. The supplemental motion again contended that the special audit did not permit recovery under R.C. 117.28 and that there was no illegal expenditure of public funds.
 {¶ 7} The district court ultimately granted Gilbane summary judgment holding that a fixed-fee contract existed between MVSD and Gilbane and that any payments made to Gilbane were the result of that contract. The court noted that, "[p]laintiff again has failed to cite any constitutional, statutory, or administrative provision that allegedly was violated by defendant's receipt of money from the MVSD. Certainly there is nothing inherently illegal about a fixed-fee contract."
 {¶ 8} As a result of Gilbane prevailing on its summary judgment motion in federal court, the trial court in the instant case ultimately permitted DeJute to assert the defenses of collateral estoppel and res judicata in a motion for partial summary judgment as it related to the first two claims of the cause of action against him. Specifically, the claims that by acting in his capacity as Director of the MVSD, DeJute improperly caused or permitted the MVSD to pay (1) Mascaro $385,000 for services not performed, and (2) Gilbane $1,960,890 for services not provided. DeJute contended that the federal court rejected those same two claims in the Gilbane suit and, as such, the plaintiff should be barred from relitigating those same claims against him.
 {¶ 9} In its response to DeJute's summary judgment motion, the plaintiff argued that the district court misapplied the law in the Gilbane case and the law should be applied correctly against DeJute. The plaintiff also contended that claims for recovery against DeJute relating to Mascaro and Gilbane were not barred by collateral estoppel or res judicata.
 {¶ 10} In a judgment entry dated February 15, 2002, the trial court granted in part and denied in part DeJute's motion for partial summary judgment. The court concluded that, regarding plaintiff's claim against DeJute for payments made to Gilbane, "[i]f Gilbane had no liability for payments it received from the MVSD or services it performed or failed to perform for the MVSD, then DeJute has no liability for approving those same payments." Thus, the trial court concluded that plaintiff's claim against DeJute, as it relates to Gilbane, is barred by the doctrines of collateral estoppel and res judicata.
 {¶ 11} Regarding DeJute's contention that the plaintiff's claim against DeJute, as it relates to Mascaro, is also barred, the trial court held that neither party provided adequate evidence to demonstrate whether MVSD made payments to Mascaro or whether Gilbane made payments to Mascaro with funds Gilbane received from MVSD or another source. Therefore, the trial court denied DeJute's partial summary judgment motion as it related to Mascaro.
 {¶ 12} Plaintiff-appellant subsequently appealed, citing a single assignment of error:
 {¶ 13} "The trial court erred in granting partial summary judgment to Defendant Frank DeJute on Plaintiff's claim that Defendant improperly approved payments to the Gilbane Building Company when it decided that the doctrines of collateral estoppel and res judicata required it to follow the October 17, 2001 Opinion and Order in Mahoning Valley SanitaryDistrict, ex rel. Betty D. Montgomery, Attorney General of Ohio v. TheGilbane Building Co. (United states District Court for the Southern District of Ohio Case No. C-2-98-785) (February 15, 2002 Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment T.d. 115)."
 {¶ 14} Appellant contends that the trial court erred when it granted summary judgment by applying the doctrines of collateral estoppel and res judicata as the issues presented and parties in the federal action were different than in this action, and when the issue presented is of such important public interest.
 {¶ 15} The doctrine of collateral estoppel holds that, "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different."[2] The Supreme Court of Ohio has held that a federal court is a court of competent jurisdiction for purposes of collateral estoppel.[3]
 {¶ 16} In order to determine whether there is privity of parties, "`a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest.'"[4] Appellant argues that there is no privity between DeJute and Gilbane because (1) there is no succession in interest from one to the other, and (2) they stood on opposite sides of a contract and were "subject to completely different standards and obligations."
 {¶ 17} In its judgment entry, the trial court held, as a matter of law, that DeJute was in privity with Gilbane in the federal court case for res judicata and collateral estoppel purposes. The trial court held that briefs from this case frequently referred to the Gilbane case and court rulings in each case referred to decisions in the other case. The trial court also concluded that both DeJute and Gilbane shared the same interest in denying that Gilbane failed to perform any services it owed the MVSD and that Gilbane was liable to MVSD for payments it received with DeJute's approval. We agree.
 {¶ 18} Although DeJute and Gilbane were on opposite sides of the contract entered into regarding the capital improvement plan, when a R.C. 117.28 recovery action was commenced, both parties became potentially liable for the illegal expenditure of public monies. Thus, the fact that one was on the receiving end of the money and the other had the authority to approve those monies does not preclude both being held liable in the recovery action. Furthermore, appellant did not assert how the higher fiduciary standards applicable to DeJute were an issue in determining whether DeJute improperly caused or permitted MVSD to pay Gilbane for services not provided.
 {¶ 19} Appellant also contends that the issues presented in both cases are not identical for collateral estoppel purposes. In order to determine whether issues in two actions are identical, the court should look at whether the same evidence would be presented in each issue.[5]
 {¶ 20} Appellant argues that the issue in the Gilbane action was "whether a private construction manager received money for work it did not perform" and the issue in this case is "whether a director of the Mahoning Valley Sanitary District entered into a contract not authorized by the Court of Jurisdiction and permitted payments pursuant to that unauthorized contract." Appellant contends that Gilbane, as a private party, was subject to different standards than was DeJute, making the issues different for collateral estoppel purposes. We disagree.
 {¶ 21} Although, as a public official, DeJute is held to a higher standard of conduct, we find this to be tangential to the issue at hand. The true issue is whether the money approved by DeJute and received by Gilbane for construction management of the capital improvement plan was illegally transferred, thereby providing a basis for recovery under a R.C. 117.28 statutory cause of action. That issue was decided by the district court in the Gilbane suit. The district court concluded that the fixed-fee contract between Gilbane and the MVSD did not permit recovery pursuant to R.C. 117.28. Thus, DeJute, as Director of the MVSD and the individual responsible for approving payments to Gilbane, could not be found liable for illegally approving funds when such funds were legally received according to the contract. Therefore, although DeJute is held to a heightened standard of care as director, the contract between MVSD and Gilbane was held to be lawful, thereby obviating a need to determine whether DeJute acted in accordance with that higher standard. We hold that the Gilbane suit and this present cause of action are the same issue for collateral estoppel purposes.
 {¶ 22} Appellant also asserts that, even if this court determines that all elements of collateral estoppel are present, we should reverse the decision of the trial court based on a public interest exception. Appellant refers to the Restatement of Law 2d, Judgments, Section 28 and argues that, although an issue has been litigated and determined by final judgment, relitigation may be necessary where there is "a clear and convincing need for a new determination of the issue."
 {¶ 23} Appellant contends that there is a strong public interest in relitigating this issue to avoid a binding precedent which will "hamstring the Auditor's Office in its attempts to root out corruption in government."
 {¶ 24} The Supreme Court of Ohio has recognized that a public interest exception to the general rule of collateral estoppel exists.[6]
However, such an exception is to be implemented in only the most extreme circumstances.[7] We do not agree that the circumstances of the instant case require this court to bypass the doctrine of collateral estoppel. The district court determined that the contract at issue between Gilbane and MVSD was a legal, fixed-fee contract. That finding precludes appellant from attempting to "take another bite at the apple" in the instant suit and relitigate the legality of that contract again. The issue has been resolved between these parties regarding this contract. The auditor is not precluded from rooting out corruption in government where legitimate concerns regarding "illegal expenditures" exists and meet all of the statutory criteria for a recovery action under R.C. 117.28.
 {¶ 25} The Gilbane case is pending in the Sixth Circuit Court of Appeals. Subsequent to the trial court granting DeJute a partial summary judgment, the Attorney General voluntarily dismissed the remaining claims against DeJute without prejudice and appealed the granting of the partial summary judgment to this court.
 {¶ 26} Pursuant to Civ. R. 60(B)(4), should the decision of the federal district court regarding the legality of the contract between MVSD and Gilbane be reversed on appeal, the Attorney General may reopen the action against DeJute at that time with a motion for relief from judgment.
 {¶ 27} Civ. R. 60(B)(4) reads:
 {¶ 28} "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: *** (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]"
 {¶ 29} The Supreme Court of Ohio has held that, "it is well-settled that relief under Civ. R. 60(B)(4), `*** is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel ***'."[8]
 {¶ 30} Appellant's assignment of error is without merit. The holding of the trial court is affirmed.
DIANE V. GRENDELL, J., concurs.
JUDITH A. CHRISTLEY, J., concurs with concurring opinion.
[1] R.C. 6115.16.
[2] (Citations omitted.) Ft. Frye Teachers Assn., OEA/NEA v. StateEmp. Relations Bd. (1998), 81 Ohio St.3d 392, 395.
[3] Id.
[4] Id. at 396, quoting Trautwein v. Sorgenfrei (1979),58 Ohio St.2d 493, 501.
[5] Id. at 396.
[6] State v. Williams (1996), 76 Ohio St.3d 290, 295-296.
[7] Id.
[8] (Citation omitted.) Doe v. Trumbull Cty. Children Services Bd.
(1986), 28 Ohio St.3d 128, 130, fn. 2.