DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, the city of Tallmadge ("the City"), appeals from the decision of the Cuyahoga Falls Municipal Court's suppression of evidence. We reverse and remand for proceedings consistent with this opinion.
 I. {¶ 2} This case was previously before us. Tallmadge v. Barker, 9th Dist. No. 23961, 2008-Ohio-2154. In that case, we summarized the relevant facts as follows:
 {¶ 3} "On August 19, 2007, Brimfield Township police officer William Reese happened upon the scene of a one-car automobile accident in Portage County. His investigation led him to a residence in the City of Tallmadge, located in Summit County. Sergeant Reese entered the residence with the consent of its owner, who awakened her two sons for questioning. While Sergeant Reese discussed the accident with the young men at the kitchen table, he saw a confrontation between a young female and several young males through a sliding glass door. *Page 2 
The female, who was later identified as [Barker], entered the residence. Sergeant Reese detected the odor of alcohol on her person and noted that her eyes appeared bloodshot and her speech seemed labored. He was also informed by another individual at the scene that [Barker] had pulled her car into the driveway, barely avoiding a collision with his police cruiser, and that she had driven a juvenile home from a party in Kent, Ohio. Sergeant Reese administered a horizontal gaze nystagmus (HGN) test and a breath-alcohol content test.
 {¶ 4} "Tallmadge police officers joined in the investigation. Within approximately one hour, Tallmadge police Lieutenant Ron Williams spoke with [Barker] at her home. He `noticed her eyes were watery and bloodshot' and `notice[d] an odor of alcoholic beverage on her.' Lieutenant Williams also performed a second HGN test and placed [Barker] under arrest shortly thereafter. She was charged with operating a motor vehicle with a prohibited blood alcohol content, a violation of Tallmadge Codified Ordinance 333.01(a)(1)(D), and operating a motor vehicle while under the influence of alcohol, a violation of Tallmadge Codified Ordinance 333.01(a)(1)(A).
 {¶ 5} "On September 18, 2007, [Barker] moved to suppress `the evidence adduced from [her] arrest,' arguing that Lieutenant Williams lacked probable cause to arrest her and failed to advise her of her constitutional rights at the time of her arrest. Specifically, [Barker] moved to suppress:
 `1. The opinion of the arresting officer regarding [Barker's] sobriety.
 `2. Statements taken from [Barker] or caused to be taken from [Barker].
 `3. Evidence of the results of any physical performance or coordination tests performed by [Barker].
 `4. Any other evidence obtained as a result of [Barker's] arrest for operating a motor vehicle under the influence of alcohol.' *Page 3 
 {¶ 6} "*** The trial court concluded that `Lieutenant Williams had reasonable suspicion to inquire of the Defendant,' but that "[w]ithout more, the Court does not believe that there [was] probable cause to arrest the Defendant for OVI. *** Defendant's Motion is granted.' Tallmadge perfected this appeal as provided by Crim. R. 12(K)."Barker, supra, at ¶¶ 2-4.
 {¶ 7} In our initial review of this case, we found that we were without jurisdiction as "it is not apparent from the trial court's journal entry that any evidence has been suppressed in this case, and this Court concludes that the trial court's order does not fall within the provisions of R.C. 2945.67(A) and Crim. R. 12(K)." Id., at ¶ 8. Therefore, we dismissed the appeal. Id. On August 28, 2008, upon remand, the trial court amended its journal entry to specifically suppress the following evidence;
 "the Court suppresses any and all evidence after the arrest of [Barker] for OVI, to include any statements made by [Barker] after her arrest, the BAC results, and any actions in the cruiser or at the station. Observations made by Officer Reese and Lt. Williams prior to arrest, the result of both HGN tests, any statements by any witnesses and any statements of [Barker] prior to her arrest are admissible."
 {¶ 8} The City timely asserted this appeal. The City has raised three assignments of error, some of which we have combined for ease of review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN NOT FINDING PROBABLE CAUSE FOR AN ARREST."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN SUPPRESSING ANY AND ALL EVIDENCE AFTER THE ARREST OF [BARKER] FOR OVI, TO INCLUDE STATEMENTS MADE BY [BARKER] AFTER HER ARREST, THE BAC RESULTS, AND ANY ACTIONS IN THE CRUISER OR AT THE STATION, BUT ADMITTING OBSERVATIONS MADE BY OFFICER REESE AND LT. WILLIAMS PRIOR TO ARREST, THE RESULTS OF BOTH HGN TESTS, *Page 4 
ANY STATEMENTS BY ANY WITNESS AND ANY STATEMENT OF [BARKER] PRIOR TO HER ARREST."
 {¶ 9} In its first and second assignments of error, the City contends that the trial court erred in not finding probable cause for an arrest and erred in suppressing any and all evidence after Barker's arrest. We agree.
 {¶ 10} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
{¶} The parties agree with and do not contest the trial court's finding that Lt. Williams had a reasonable suspicion to inquire of Barker. See, generally, Terry v. Ohio (1968), 392 U.S. 1. Therefore, the trial court allowed the"[o]bservations made by Officer Reese and Lt. Williams prior to arrest, the results of both HGN tests, any statements by any witnesses and any statements of [B]arker prior to her arrest[.]" The trial court stated that it based this decision on the fact that the witnesses in this case were reasonably trustworthy sources.
 {¶ 12} "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v.Homan, 89 Ohio St.3d 421, 427, superceded by statute on other grounds as recognized by State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, citingBeck v. Ohio (1964), 379 U.S. 89, 91; State v. Timson *Page 5 
(1974), 38 Ohio St.2d 122, 127. We have further stated that "there is no prerequisite that an officer observe erratic driving in order to effectuate an arrest for driving under the influence." State v.Kurjian, 9th Dist. No. 06CA0010-M, 2006-Ohio-6669, at ¶ 17. In making its determination on probable cause, the trial court stated:
 "Neither the Officer nor the Lieutenant observed [Barker] driving. In fact, there was no evidence of bad driving, even through the other witnesses. Though she admitted to drinking at a party, [Barker] only admitted to having one drink. The passenger in her vehicle only noted the consumption of one drink by [Barker]. The only other evidence was an odor of an alcoholic beverage, bloodshot and watery eyes and four clues on the HGN test. No other field sobriety tests were performed. It was 4:30 a.m. and [Barker] had just had a fight with her boyfriend and had been sleeping. There was also a time lapse between when she returned home from the party and when the Lieutenant observed [Barker] and performed the HGN test. Without more, the Court does not believe that there is probable cause to arrest [Barker] for OVI."
 {¶ 13} While most of facts are supported by competent, credible evidence, we note that the trial court has misstated an important piece of the evidence. The trial court stated that Barker admitted to only having one drink and that her passenger, Scott Protich, indicated that she only had one drink. Our review of the record does not support these statements. During his testimony, Protich stated that he saw Barker "sitting on the couch, listening to music and she did drink a beer. Ididn't know how much she drank," but testified that he did see her drink. (Emphasis added.) However, this testimony cannot provide a basis for Lt. Williams' probable cause determination. There is no testimony that Lt. Williams spoke with Protich or knew of this fact prior to arresting Barker. See Kurjian, supra, at ¶ 17 and ¶ 21. So, even though the trial court misstated this fact, it should not have considered it in its analysis.
 {¶ 14} Sgt. William Reese testified that Barker admitted to drinking at the party. Sgt. Reese did not testify that Barker admitted to only having one drink. Lt. Williams stated that prior to speaking with Barker he spoke with Sgt. Reese, who informed him that Barker had *Page 6 
admitted that "she had been consuming alcoholic beverages." Lt. Williams testified that when he personally questioned Barker, she admitted to drinking and that she had one drink. While it is true that Barker admitted to one drink to Lt. Williams, the evidence indicates that Lt. Williams had other information at the time of arrest that she had previously admitted to drinking alcoholic beverages, i.e., more than one.
 {¶ 15} The trial court further stated that Lt. Williams' HGN test revealed four clues and that there was a lapse of time between when Barker arrived home and the test was administered. The Ohio Supreme Court has held that "the HGN test has been shown to be a reliable test, especially when used in conjunction with other field sobriety tests and an officer's observations of a driver's physical characteristics, in determining whether a person is under the influence of alcohol."State v. Bresson (1990), 51 Ohio St.3d 123, 129.
 {¶ 16} The trial court stated that there was no evidence of bad driving, even through other witnesses. It appears that the trial court ignored Lt. Williams' testimony that prior to going to Barker's home, he spoke with Sgt. Reese's wife, who informed him that Barker abruptly pulled into the driveway behind the cruiser. Therefore, the trial court's statement that there was no evidence of bad driving is not supported by competent, credible evidence.
 {¶ 17} We review the trial court's application of law regarding bad driving to the facts of this case de novo. Searls,118 Ohio App.3d at 741. We have previously stated that "`it is possible to have a valid arrest for driving under the influence of alcohol even though the arresting officer has not actually observed the arrestee operating a vehicle in an erratic or unsafe manner.'" State v. Snider, (July 28, 1999), 9th Dist. No. 2924-M, at fn.3, quoting State v. Finch (1985),24 Ohio App.3d 38, 40. We went on to explain that in a probable cause determination, the trial court is required to review the totality of the circumstances. Snider, supra, at *2. *Page 7 
Therefore, even if we conclude that the trial court's finding of no bad driving is not supported by the evidence, we review the totality of the evidence to determine what other factors the officer knew at the time of the arrest and determine whether those factors were enough to warrant probable cause. Id. See, also, Finch, supra, at 40.
 {¶ 18} Accordingly, we must look at whether Lt. Williams "acquired information above and beyond [Barker's] drunken appearance." State v.Swegheimer (Oct. 23, 1987), 5th Dist. No. 87AP040027, at *3. In the instant case, the trial court noted that "[t]he only other evidence was an odor of an alcoholic beverage, bloodshot and watery eyes and four clues on the HGN test." Further, Barker admitted to drinking alcohol and it was 4:30 a.m.
 {¶ 19} We do not agree with the trial court's conclusion that the evidence was insufficient for a finding of probable cause. In the instant case, Lt. Williams had the added knowledge of the four clues on the HGN test. As we noted above, the Ohio Supreme Court has stated that this test, along with officer observations, is a reliable test for determining if a person is under the influence. Bresson,51 Ohio St.3d at 129. Further, although Lt. Williams did not personally observe Barker's bad driving, he testified that he spoke to Sgt. Reese's wife, who observed Barker abruptly pull into the driveway behind the parked police cruiser. Finally, we reiterate that Sgt. Reese informed Lt. Williams that Barker admitted to him that she had been drinking alcoholic beverages. We conclude that Lt. Williams had probable cause to arrest Barker and that the trial court erred in granting Barker's motion to suppress. Accordingly, the City's first and second assignments of error are sustained.
 ASSIGNMENT OF ERROR III "THE ADMINISTRATIVE LICENSE SUSPENSION WAS IMPROPERLY TERMINATED BEFORE THE MAGISTRATE'S DECISION WAS ADOPTED BY THE TRIAL COURT." *Page 8 
 {¶ 20} In its third assignment of error, the City contends that the administrative license suspension (ALS) was improperly terminated before the magistrate's decision was adopted by the trial court. In other words, the City is challenging the determination of Barker's ALS appeal.
 {¶ 21} An appeal of an administrative license suspension is a civil proceeding. State v. Williams (1996), 76 Ohio St.3d 290, 296. "A trial court's determination of an administrative-license-suspension appeal is an order entered in a special proceeding and is final pursuant to R.C. 2505.02. (Columbus v. Adams [1984], 10 Ohio St.3d 57, 10, overruled.)"Williams, 76 Ohio St.3d at paragraph two of the syllabus. Although an ALS affects a substantial right, if determined by a magistrate, it must still meet the requirements set forth in Civ. R. 53. Regardless, we find that the City has failed to properly appeal from the ALS appeal. According to App. R. 3(D), the City's notice of appeal was required to "designate the judgment, order or part thereof appealed [sic] from[.]" The City's notice of appeal indicates that it is appealing from the trial court's grant of Barker's motion to suppress. It does not mention the ALS appeal determination. See App. R. 3(A). Even if the City had properly appealed from this decision, we would find that we are without jurisdiction to review this assignment of error.
 {¶ 22} On September 14, 2007, an administrative license suspension hearing was held. The City contends that it did not receive notice of this decision. We note that the magistrate's decision was never adopted by the trial court. Both parties concede this point.
 {¶ 23} According to Civ. R. 53(D)(4)(a), "[a] magistrate's decision is not effective unless adopted by the court." Accordingly, by not adopting the magistrate's decision, the trial court has not entered judgment on this issue. State v. Makoroff, 9th Dist. No. 06CA0082-M, 2007-Ohio-4348, at ¶ 11; Harkai v. Scherba Industries, Inc. (2000), 136 Ohio App.3d 211,218 (finding that "only a judge, not a magistrate, may terminate a claim or action by entering judgment."). *Page 9 
Therefore, the magistrate's decision is not a final appealable order, and we are without jurisdiction to review this issue. Makoroff, supra.
 {¶ 24} We decline to address the City's third assignment of error.
 III. {¶ 25} The City's first and second assignments of error are sustained. We decline to address the City's third assignment of error. The judgment of the Cuyahoga Falls Municipal Court is reversed and the cause is remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee. *Page 10 
SLABY, P. J. CARR, J. CONCUR. *Page 1